UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MANOUTCHERH & JALEH MOVASSATE, TRUSTEES, MOVASSATE FAMILY TRUST, <br><br>Plaintiff, <br>v. <br><br>DUDLEY RIDGE PROPERTIES, LLC, et al., <br><br>Defendants. | Case No.: 10-CV-02313-LHK <br><br>ORDER GRANTING DEFENDANTS COLLIERS PARISH INTERNATIONAL, CHRIS TWARDUS AND MARK ZAMUDIO'S MOTION TO DISMISS WITH LEAVE TO AMEND <br><br>(re: docket #47) |

Plaintiffs Manoutcherh Movassate and Jaleh Movassate, trustees of the Movassate Family Trust, bring suit for recovery of response costs against various Defendants under the Comprehensive Environmental Responses, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*. and the California Hazardous Substance Account Act ("California HSAA"), Cal. Health & Saf. Code § 25363(e). Plaintiffs seek response costs in connection with alleged contamination of property located at 450 Montague Expressway, Milpitas, California (the "Property"). In addition to these claims for recovery of response costs, Plaintiffs also bring numerous state law claims in connection with their June 2008 purchase of the Property, including claims of professional negligence and breach of fiduciary duty against Defendants Colliers Parish International, Inc., Mark P. Zamudio and Chris C. Twardus' (collectively "Broker Defendants"). Presently before the Court is the Broker Defendants' motion to dismiss for failure to state a claim. The Court held a hearing on this matter on January 27, 2011. For the reasons set forth below, Broker Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND.

1

Case No.: 10-CV-02313-LHK
ORDER GRANTING BROKER DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

# I. BACKGROUND

## A. The Parties

### 1. Plaintiffs: Buyers of Property

Plaintiffs are Manoutcherh Movassate and Jaleh Movassate, trustees of the Movassate Family Trust ("Plaintiffs"). Plaintiffs are the owners of record of the Property at 450 Montague Expressway, Milpitas, California. Pls.' First Am. Compl. ("FAC") ¶ 4. Plaintiffs purchased the Property in a June 20, 2008 Purchase and Sale Agreement ("June 2008 Agreement"). Plaintiffs allege they purchased the Property pursuant to Defendants' "false representations" that the Property was not contaminated with hazardous substances. *Id*.

### 2. Defendants: Seller, Former Tenant and Brokers of the Property

Plaintiffs have sued various sets of Defendants in connection with the June 2008 Agreement and allegation of contamination. Plaintiffs bring suit against the entity that sold them the Property, namely Dudley Ridge Properties, LLC ("Dudley Ridge"), a California limited liability company. *Id*. at ¶ 5. According to Plaintiffs' allegations, another Defendant, Lost Hills LLC ("Lost Hills") is a Washington limited liability company, and is the successor in interest to Dudley Ridge through a merger of the two companies. *Id*. at ¶ 6.

Besides the seller of the Property, Plaintiffs also name a former tenant, Peco Controls Corporation ("PECO") as a Defendant. Plaintiffs allege that PECO, a California corporation, leased the Property from Dudley Ridge and manufactured machinery for the cannery industry. *Id*. at ¶ 7.

Finally, Plaintiffs have named as Defendants the real estate brokers that provided services in connection with the eventual sale of the Property in June 2008. Defendant Colliers International Asset Management, Inc. ("Colliers") is a California corporation. *Id*. at ¶ 8. Defendant Mark P. Zamudio ("Zamudio"), an employee and Vice-President of Colliers, served as Defendant Dudley Ridge's real estate broker in connection with the sale of the Property. *Id*. at ¶ 9. Defendant Chris C. Twardus ("Twardus"), also an employee and Vice-President of Colliers, served as Plaintiffs' real estate broker in connection with the purchase of the Property. *Id*. at ¶ 10. Colliers acted as an authorized dual agent and broker. *Id*. at ¶ 99.

**B. Plaintiffs' Allegations**

**1. Lead-up to the June 2008 Agreement**

On April 30, 2008, Plaintiffs entered into their original purchase agreement with Seller (Dudley Ridge). A copy of this agreement is attached as Exhibit A to Plaintiff's original complaint filed on May 26, 2010. On June 4, 2008, Plaintiffs cancelled the first agreement, as permitted by the agreement's conditions, because they believed the price of the Property, $11.2 million at that time, was too high.

On or about June 20, 2008, Plaintiffs agreed to purchase the Property from Defendant Dudley Ridge for approximately $9 million, with $5.9 million paid in cash and $3.1 million financed through Dudley Ridge. FAC at ¶¶ 14-15. The June 2008 Agreement is attached as Exhibit A to Plaintiff's FAC. The June 2008 Agreement, in paragraph 7, included an "As Is" clause, in which the Buyer (i.e., Plaintiffs) acknowledged purchase of the property "As Is" and "Where Is," and that, except as expressly set forth in the June 2008 Agreement, the Seller and Seller's agents did not make any representations with respect to the Property, including "its environmental condition." *See* June 2008 Agreement, Exh. A. to FAC at ¶ 7. The "As Is" clause includes a provision entitled "Release of Seller," in which the Buyer acknowledged that the purchase price reflects the "As Is" nature of the transaction. In addition, the Buyer agreed to release the Seller and its agents of any and all claims "arising out of or in connection with:" the condition of the Property; the environmental and land use aspects of the Property; the nature, contamination or environmental state of the Property; and the existence, presence or release of "hazardous materials" in, on or under the Property. *Id*. at ¶ 7(c). The release, however, does not include: (a) breach of express representations in the June 2008 Agreement by the Seller; (b) the disclosure obligations of Seller under California law; or (c) any matter that would be fraud or deceit. *Id*.

In Paragraph 8 of the June 2008 Agreement entitled "Seller's Representations," Dudley Ridge represented that, to its "actual knowledge," there are no hazardous materials on the Property, nor has any release occurred or is threatened to occur. *Id*. at ¶ 8. These representations also included a "Disclaimer" stating that, except as disclosed in environmental reports provided to the

3

Buyer, neither the Seller nor any predecessor in interest used, stored or released hazardous materials in violation of applicable laws. *Id.* Paragraph 12 of the June 2008 Agreement entitled "Seller's Disclosures" includes a provision on "Environmental Hazard Consultation," in which the Buyer and Seller are each advised to consult with "technical and legal experts" concerning potential environmentally hazardous substances on the Property and a statement that Buyer agrees that, under the "As Is" clause, it will be responsible for correcting environmental hazard should that be required by a governmental agency. *Id.* at ¶ 12.

Finally, Paragraph 34 of the June 2008 Agreement includes a venue provision, in which Buyer (Plaintiffs) and Seller (Dudley Ridge) agree to the jurisdiction of the "California State Courts located in Santa Clara County, where the Property is situated as a venue for the resolution of all disputes arising between the parties in connection with this Agreement." *Id.* at ¶ 34.[1]

**2. Environmental Reports Disclosed to Plaintiffs**

Plaintiffs allege that, in connection with the sale of the Property, Defendant Dudley Ridge disclosed a Phase I environmental report and a Phase II environmental report. FAC ¶ 17. These reports are attached to the FAC as Exhibits B and C, respectively. The first report is titled "Phase I Environmental Site Assessment" and is dated February 10, 1999. The Phase I report recommended additional sampling of the Property for lead-based paint and asbestos, removal or capping of an abandoned well pipe, cleaning or removal of an exhaust duct, and limited soil sampling around a "hazardous materials storage area." The Phase II report, titled "Suspect Material Survey," is dated August 2000. The Phase II report addresses only the possible presence of asbestos and lead-based materials. FAC ¶ 18.

Plaintiffs allege that Defendant Dudley Ridge provided them two additional documents, one entitled "Remediation" and the other entitled "Certificate of Completion." These documents are attached as Exhibits D and E to the FAC, respectively. The Remediation document, which is unsigned but allegedly drafted by Dudley Ridge, states that "no evidence of spills was observed"

---

[1] No party raised the June 2008 Agreement's venue provision as a reason for dismissal of this action, or parts of this action, without prejudice to re-filing in California state court. At the January 27, 2011 hearing, counsel for Defendant PECO suggested it would file a motion for dismissal on venue-related grounds. As of the date of this Order, no such motion has been filed.

4

Case No.: 10-CV-02313-LHK
ORDER GRANTING BROKER DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

and that "[t]he property had only one tenant since its construction. Two of our LLC members owned or worked for the tenant company for nearly all of this time. They were confident that no spillage had ever occurred on the property and so felt that testing was not necessary." FAC ¶ 20. The Certificate of Completion, dated January 20, 2001, states that asbestos containing material and construction debris were disposed of at the Forward Landfill in Manteca, California. *Id*. at ¶ 21.

### 3. Alleged Contamination at Property and Plaintiffs' Twelve Causes of Action

Plaintiffs allege that they planned to build residential units upon the Property, but that, in the course of refinancing their loan, Plaintiffs were required to perform a "Soil and Groundwater Investigation." *Id*. at ¶ 24. This investigation found solvents in either the soil or groundwater, and chlorinated hydrocarbons in the groundwater. *Id*. Plaintiffs submit, had they known of this contamination, they would not have entered into the June 2008 Agreement.

Plaintiffs bring twelve causes of action: (1) for rescission of the June 2008 Agreement against Dudley Ridge and Lost Hills; (2) for breach of implied covenant of good faith and fair dealing against Dudley Ridge and Lost Hills; (3) for misrepresentation/concealment against Dudley Ridge and Lost Hills in connection with alleged "false representations" that the Property was not contaminated; (4) for negligent misrepresentation against Dudley Ridge and Lost Hills; (5) for recovery of response costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a) against Dudley Ridge, Lost Hills and PECO; (6) for recovery of response costs pursuant to the California HSAA, Cal. Health & Saf. Code § 25363(e) against Dudley Ridge, Lost Hills and Peco; (7) for nuisance against Dudley Ridge, Lost Hills and PECO; (8) for trespass against Dudley Ridge, Lost Hills and PECO; (9) for equitable indemnity and contribution against Dudley Ridge, Lost Hills and PECO based on the California Regional Water Quality Control Board for the San Francisco Bay Region's assertion of jurisdiction over the Property and potential requirement of cleanup costs; (10) for injunctive relief against Dudley Ridge, Lost Hills and PECO in the form of a requirement for these entities to assume responsibility for abating the alleged contamination; (11) for professional negligence against real estate brokers Colliers, Zamudio and Twardus for failure to disclose the contamination and failure to investigate and recommend proper investigation of the condition of the Property; and (12) for breach of fiduciary duty against Twardus (Plaintiffs' real estate broker).

**C. Broker Defendants' Submission of Extrinsic Documents**

The Broker Defendants (Colliers, Zamudio and Twardus) have moved to dismiss for failure to state a claim. In their motion, the Broker Defendants cite to three additional documents which they allege all parties have in their possession and represent agreements between the parties in connection with the June 2008 Agreement. First, a September 14, 2007 "Exclusive Authorization to Sell" Agreement between Colliers and Dudley Ridge, which includes a provision that "Expert Matters," including those related to the use, storage, or presence of hazardous substances are "beyond the expertise and/or responsibility of Broker" and that Dudley Ridge will not rely on Colliers for such "Expert Matters." Second, a June 19, 2008 "Dual Agency Agreement" between Plaintiffs, Dudley Ridge, and Broker Defendants, which authorizes Colliers to act as a dual agent, states that the Broker Defendants have not investigated the property and that the Brokers' disclosure responsibilities will be met by disclosure of material facts provided by the Seller (Dudley Ridge) or actually known by the Brokers. The "Dual Agency Agreement" also provides that the Seller and Buyer, not the Brokers, will address "Expert Matters." Finally, a June 25, 2008 "Expert Matters Agreement," which provides that: (a) Brokers have not made and will not make an independent investigation into any "Expert Matters," including with regard to the use, storage or presence of hazardous substances; (b) Broker's disclosures will not include information beyond that provided by the Seller or known by Brokers; and (c) Brokers recommend that Buyer obtain advice from a qualified legal professional. *See* Broker Defs.' Mot. to Dismiss, Attach. 2 and 3.

## II. LEGAL STANDARDS

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc.*, 606 F.3d 658, 664 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter,

accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When ruling on a Rule 12(b)(6) motion, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and must give the nonmoving party an opportunity to respond. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A court may, however, consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id*. at 908. Thus, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id*. The court may treat such a document as part of the complaint, and may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6). *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Summary judgment may be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). Material facts are those which may affect the outcome of the case and a dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In a motion for summary judgment, the Court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Under Rule 56(d),[2] a party may request a continuance of the summary judgment ruling or request additional time to take discovery, but such a party "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *See Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. Cal. 2006). But a continuance under Rule 56(d) is inappropriate when the evidence sought is "almost

---

[2] Former Federal Rule of Civil Procedure 56(f), cited in the parties' briefing, was amended in 2010. Those provisions are now set forth in Rule 56(d).

7

Case No.: 10-CV-02313-LHK
ORDER GRANTING BROKER DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

certainly nonexistent or is the object of pure speculation." *See Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 2001).

## III. DISCUSSION

### A. The Court treats Broker Defendants' Motion as a Motion to Dismiss

The Broker Defendants have moved to dismiss for failure to state a claim under Rule 12(b)(6). According to Broker Defendants, the Court may consider the three extrinsic documents cited in their motion ("Exclusive Authorization to Sell," "Dual Agency Agreement," and "Expert Matters Agreement") to dismiss under the "incorporation by reference" rule because Plaintiffs do not dispute the documents authenticity and, although not physically attached to the FAC, Plaintiffs' claims against Broker Defendants necessarily rely on the contractual agreements with the Broker Defendants. In the alternative, Broker Defendants request the Court to convert their motion into one for summary judgment under Rule 12(d).

Plaintiffs did not challenge the authenticity of the documents in their briefing, and, at the January 27, 2011 hearing, Plaintiffs acknowledged the documents' authenticity. Instead, Plaintiffs argue that it would be "unfair and prejudicial" to consider these documents because Plaintiffs have not yet had the opportunity to depose Defendants Zamudio and Twardus, or depose any representative of Seller with respect to the three disclosure documents.

Plaintiffs' objections are not well-taken. With discovery open for the past five months (since August 2010), Plaintiffs could have deposed relevant individuals. Moreover, the "Dual Agency Agreement" and the "Expert Matters Agreement" were actually signed by Plaintiffs, and formed part of the contractual agreement between Plaintiffs and their Brokers. Plaintiffs cannot selectively ignore, or ask the Court to ignore, signed agreements that form the basis for the relationship between Plaintiffs and Broker Defendants. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) ("If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity … is not contested' and 'the plaintiff's complaint necessarily relies' on them."). Thus, the Court will take judicial notice of the "Dual Agency Agreement" and the "Expert Matters Agreement."

1     Plaintiffs are correct, however, that the "Exclusive Authorization to Sell" is a contract

2 between Seller (Dudley Ridge) and Colliers.  Plaintiffs are not a party to that agreement and are not

3 bound by any of its terms and conditions.  Broker Defendants respond that the "Exclusive

4 Authorization to Sell," though not binding on Plaintiffs, is relevant and should be considered "to

5 demonstrate the consistency in the scope of duties undertaken on behalf of Buyers and Sellers to

6 the transaction."  *See* Broker Defs.' Reply at 12.  Such a consideration is inappropriate on a motion

7 to dismiss, and is, in any event, unnecessary to the Court's analysis below.  Accordingly, the Court

8 will not take judicial notice of the "Exclusive Authorization to Sell."

### B. Claim Against Defendant-Seller's Brokers Zamudio and Colliers

The Court will analyze separately Plaintiffs' claims against the Defendant-Seller's Brokers and the Plaintiffs-Buyer's Brokers.  Plaintiffs' eleventh cause of action is for professional negligence against the Seller's Brokers, namely Mark P. Zamudio and Colliers International.  Specifically, Plaintiffs allege that Defendants Zamudio and Colliers International had a professional duty to investigate the true material facts about the Property and to recommend proper inspections.  *See* FAC ¶ 101.

Under California law, "[t]he elements for a cause of action for negligence are commonly stated as (1) a legal duty to use care; (2) a breach of that duty; (3) a reasonably close causal connection between that breach and the resulting injury; and (4) actual loss or damage."  *See Ahern v. Dillenback*, 1 Cal. App. 4th 36, 42 (Cal. App. 4th Dist. 1991).  "Real estate brokers are subject to two sets of duties: those imposed by regulatory statutes, and those arising from the general law of agency."  *See Carleton v. Tortosa*, 14 Cal. App. 4th 745, 755 (Cal. App. 3d Dist. 1993).  Under California Civil Code § 2079, "a broker who is engaged by a seller, or who acts in cooperation with a broker engaged by a seller, has a duty 'to a prospective purchaser of *residential real property* … to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property that an investigation would reveal … .'"  *See Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 875 (Cal. App. 6th Dist. 2008) (emphasis added).  No such statutory duty applies in the context of commercial transactions, and California

courts have "expressed doubt that any such duty should be imposed" at all because "a purchaser of commercial real estate is likely to be more experienced and sophisticated in his dealings in real estate and is usually represented by an agent who *represents only the buyer's interests*." *Id.* at 876; *see also Smith v. Rickard*, 205 Cal. App. 3d 1354, 1360 (Cal. App. 2d Dist. 1988) ("the Legislature intended the duties set out in section 2079 to apply only to brokers selling residential properties of four or fewer dwellings, and not to commercial real estate transactions.").

In this action, involving the sale of commercial real estate, Plaintiffs have failed to identify any statutory or contractual duty, on the part of the *Seller's* real estate brokers, to investigate the environmental condition of the Property or to advise Plaintiffs to perform further inspections. Without such a duty, Plaintiffs fail to state a claim for professional negligence. Moreover, the June 19, 2008 "Dual Agency Agreement" between Plaintiffs, Dudley Ridge, and Broker Defendants states that the Broker Defendants have not investigated the property and that the Brokers' disclosure responsibilities will be met by disclosure of material facts provided by the Seller (Dudley Ridge) or actually known by the Brokers. *See, e.g.*, *Carleton*, 14 Cal. App. 4th at 758-59 (rejecting argument that real estate broker had duty to provide specialized advice where contract expressly disclaimed any such duty). Plaintiffs nowhere allege that Zamudio or Colliers had actual knowledge that the Property was contaminated and failed to disclose that information. Finally, in the June 2008 Agreement, the Buyer (Plaintiffs) agreed to release the Seller and its agents of any and all claims "arising out of or in connection with:" the condition of the Property; the environmental and land use aspects of the Property; the nature, contamination or environmental state of the Property; and the existence, presence or release of "hazardous materials" in, on or under the Property. *See* June 2008 Agreement, Exh. A. to FAC at ¶ 7(c). Thus, Plaintiffs have apparently waived *any* potential claim against the Seller's agents, including Defendant Colliers International and Zamudio, in connection with the environmental condition of the Property.

Accordingly, Broker Defendants' motion to dismiss is granted with respect to the professional negligence claim against Colliers International and Mark P. Zamudio. Although Plaintiffs have not identified any duty on the part of the Seller's agent, Plaintiffs did request leave to amend in their briefing and at the January 27, 2011 hearing. Plaintiffs are granted leave to

amend.  However, failure to remedy all the deficiencies identified above risks dismissal of this claim with prejudice.

### C.  Claims Against Plaintiffs-Buyer's Broker Twardus and Colliers

Plaintiffs' eleventh and twelfth causes of action are for professional negligence and breach of fiduciary duty against their real estate brokers in the June 2008 Agreement, namely Colliers International and Chris C. Twardus.  Specifically, Plaintiffs allege that these Defendants failed to investigate the accuracy of the environmental disclosure reports and failed to recommend the proper environmental inspections and investigations.  *See* FAC ¶ 101.  Although Plaintiffs professional negligence and breach of fiduciary duty causes of action are pled in separate counts, the breach of fiduciary duty cause of action includes no additional allegations.  Accordingly, the Court will analyze the claims together.

As Broker Defendants acknowledge, a real estate agent owes a fiduciary duty to his or her principal, a duty which includes "a fiduciary duty to his own client to refrain from making representations of facts material to the client's decision to buy the property without advising the client that he is merely passing on information received from the seller without verifying its accuracy."  *See Salahutdin v. Valley of California, Inc.,* 24 Cal. App. 4th 555, 562 (Cal. App. 1st Dist. 1994).  Plaintiffs do not contend that Broker Defendants violated a statutory duty.  Thus, Broker Defendants' duty must derive "from the general law of agency, i.e., from the agreement between the principal and agent.  'The existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties, interpreted in light of the circumstances under which it is made, except to the extent that fraud, duress, illegality, or the incapacity of one or both of the parties to the agreement modifies it or deprives it of legal effect.'"  *See Carleton*, 14 Cal. App. 4th at 755 (citing Restatement 2d Agency, § 376).

In this action, Plaintiffs' agreement with the Broker Defendants is contained in the June 2008 Agreement, the June 19, 2008 "Dual Agency Agreement," and the June 25, 2008 "Expert Matters Agreement."  Unlike above, the issue with respect to Defendants Twardus and, by extension, Colliers International, is not whether a duty exists, but rather the scope of that duty as agreed upon by the parties.  For the reasons described below, the Court finds that Plaintiffs have

1    failed to state a claim for professional negligence and breach of fiduciary duty against Defendants

2    Twardus and Colliers International.

3          As a preliminary point, Plaintiffs do not allege that Defendants Twardus and Colliers

4    International had actual knowledge of the alleged contamination. Rather, Plaintiffs allege that

5    Twardus and Colliers International should have investigated the accuracy of the environmental

6    disclosure reports and should have recommended proper inspections. *See* FAC ¶ 101. The

7    difficulty with these allegations is that Plaintiffs, repeatedly, signed documents agreeing that

8    "Expert Matters," including those related to the environmental condition of the property and any

9    potential hazardous substances, were beyond the expertise and responsibility of their real estate

10   brokers. *See Carleton*, 14 Cal. App. 4th at 755-756 (finding that plaintiff's claim of duty negated

11   by specific documents limiting scope of duty of real estate broker). For example, in Paragraph 12

12   of the June 2008 Agreement, Plaintiffs acknowledged that they were "advised to consult with

13   technical and legal experts concerning the existence, testing, discovery, location, and evaluation

14   of/for and risks posed by, environmentally hazardous substances, if any, located on or potentially

15   affecting the Property." *See* June 2008 Agreement at ¶ 12. In the Expert Matters Agreement,

16   Plaintiffs acknowledged that "Expert Matters," including those related to the presence of hazardous

17   or toxic substances on the Property, are beyond their Brokers' expertise and/or responsibility. *See*

18   Expert Matters Agreement at 1. The Expert Matters Agreement also included an express statement

19   that Broker recommends that the parties to the June 2008 Agreement obtain the advice of qualified

20   professionals regarding "Expert Matters," and that the parties will not rely on Broker for such

21   "Expert Matters." *Id*. Finally, in the Dual Agency Agreement, Plaintiffs again expressly agreed

22   that Broker "has no responsibility to, has not made and will not make an independent investigation

23   or determination with respect to any Expert Matters." *See* Dual Agency Agreement at 1.

24         Under these circumstances, Plaintiffs have not established that Defendants Twardus and

25   Colliers International had a duty to investigate the environmental condition of the Property or to

26   recommend additional investigation as to the environmental condition of the Property. In fact, all

27   the agreements above suggest the opposite. Plaintiffs repeatedly agreed that their Brokers Twardus

28   and Colliers International were not responsible for a determination of the environmental condition

of the Property aside from the information provided by Seller Dudley Ridge or information actually known by the Brokers.

Thus, the Broker Defendants motion to dismiss is granted with respect to the professional negligence and breach of fiduciary duty claims against Defendants Colliers International and Chris C. Twardus.  Plaintiffs are granted leave to amend.  Failure to cure all the deficiencies identified above risks dismissal of these claims with prejudice.

## IV. CONCLUSION

Accordingly, the Broker Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND.  If Plaintiffs wish to file an amended complaint, **the amended complaint must be filed and served no later than March 16, 2011.**  Failure to do so risks dismissal of their claims against Broker Defendants with prejudice.  In any amended complaint, Plaintiffs may not add new causes of action or parties without seeking leave of the Court pursuant to Fed. R. Civ. P. 15 or obtaining Defendants' permission by stipulation.

**IT IS SO ORDERED.**

Dated: February 16, 2011

_____
LUCY H. KOH
United States District Judge